# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHAEL LEE MARTZ, | HONORABLE NOEL L. HILLMAN |
| Plaintiff, | |
| v. | Civil Action |
| | No. 17-cv-01336(NLH-AMD) |
| CAMDEN COUNTY BOARD OF CHOSEN FREEHOLDERS, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Roshan D. Shah, Esquire
Scarinci & Hollenback, LLC
1100 Valley Brook Avenue
P.O. Box 790
Lyndhurst, NJ 07071-0790
Attorneys for Plaintiff Michael Lee Martz

Christopher A. Orlando, Esquire
Howard L. Goldberg, Esquire
County Counsel
520 Market Street
Camden, NJ 08102-1375
Counsel for Defendants Camden County Board of Chosen
Freeholders, Karen Taylor & David S. Owens, Jr.

**HILLMAN, District Judge:**

## I. INTRODUCTION

This matter comes before the Court on the motion for summary judgment ("the Motion") of defendants Camden County Board of Chosen Freeholders, Karen Taylor, and David S. Owens, Jr. (collectively, "Defendants"). (DE 60 and DE 70.) Counsel for plaintiff Michael Lee Martz ("Plaintiff") filed a response

in opposition to the Motion (DE 69), to which Defendants filed a reply. (DE 74.) The Motion is being considered on the papers pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the Motion will be granted as to Counts I and II of the Second Amended Complaint, and Count III shall be dismissed without prejudice.

## II. **BACKGROUND**

### A. **PLAINTIFF'S ALLEGATIONS**

Plaintiff's allegations arise from his confinement at Camden County Correctional Facility ("CCCF") between July 2015 and December 2015, and again in January-February 2016. (DE 1 at 6.) He alleges that he was subjected to overcrowded conditions while detained at CCCF. (Id. at 8.) He claims that CCCF's overcrowding led to inferior sleeping conditions on a cement floor ("Sleeping Allegation"), unsanitary toilet conditions ("Toilet Allegation"), unsanitary food preparation ("Food Preparation Allegation"), nutritionally deficient food ("Food Quality Allegation"), and poor air ventilation and quality ("Air Allegation"). (Id. at 2 and 8.)

### B. **PROCEDURAL HISTORY**

Plaintiff filed this suit on February 27, 2017. (DE 1 ("Complaint").) In a March 23, 2017 Opinion and Order, this Court screened the Complaint pursuant to 28 U.S.C. § 1915,

proceeded Plaintiff's Fourteenth Amendment conditions of confinement claims against Wardens Taylor and Owens, and dismissed the remainder of Plaintiff's claims in the Complaint. (DE 3; DE 4.)

This Court appointed pro bono counsel for Plaintiff on November 27, 2017. (DE 19.) On May 22, 2018, the Court granted Plaintiff's motion for leave to amend/correct the Complaint. (DE 33; DE 35.) Plaintiff filed his First Amended Complaint ("FAC") on June 1, 2018, asserting claims for: (1) due process violation under 42 U.S.C. § 1983, due to overcrowded conditions of confinement at CCCF ("Due Process Claim"); and (2) violations of New Jersey's Civil Rights Act, N.J. Stat. Ann. § 10:6-2, due to overcrowded CCCF conditions ("NJCRA Claim"). (DE 36 at 4-5.)

On February 6, 2019, Plaintiff obtained leave to file a Second Amended Complaint ("SAC"), which he did on February 16, 2019. (DE 49; DE 50; DE 51.) After re-asserting the Due Process Claim and NJCRA Claim, the SAC added a claim under the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1, *et seq.* Plaintiff based that claim on Camden County's failure to accommodate his "extremely limited functionality of his leg" while detained at CCCF ("NJLAD Claim"). (DE 51 at 5-6 ("CCCF failed to provide Martz with any accommodation for his disability and, instead, went out of its way to exacerbate it by

placing him in a cell with three or more persons, forcing him to sleep on the floor with his disabled leg twisted in an unnatural and uncomfortable position").)

Defendants filed an Answer on March 26, 2019. (DE 54.)

On January 30, 2019, Defendants deposed Plaintiff. (DE 60-4 at 1-38 ("Plaintiff's Deposition").) Fact discovery ended on May 1, 2019. (DE 53.)

On August 5, 2019, Defendants moved for summary judgment. (DE 60; DE 70.) On September 25, 2019, Plaintiff filed a response in opposition. (DE 69 ("Response").) On November 13, 2019, Defendants filed a reply in further support of the Motion. (DE 74 ("Reply").)

## III. DISCUSSION

Defendants' Motion seeks summary judgment on three grounds: (1) Plaintiff's failure to adduce evidence from which a reasonable fact finder could find unconstitutional conditions of confinement at CCCF as to unsanitary toilet conditions, poor ventilation, and food quality and preparation. Defendants argue that Plaintiff relies only on his own "conclusory assertions" about unconstitutional conditions of confinement and fails to provide evidence of deliberate indifference on the part of Taylor and Owens (DE 60-2 at 20-23); (2) Taylor's and Owens's entitlement to qualified immunity, based on Plaintiff's failure

to "offer proofs or even allegations of personal involvement in any constitutional deprivations allegedly suffered by Plaintiff" (id. at 23); and (3) Plaintiff's failure to offer any "evidence of how CCCF failed to provide him with accommodations" under the NJLAD or to provide "any evidence that CCCF went out of its way to exacerbate his disability." (Id. at 25.)

Plaintiff's Response argues that: he has a qualifying "disability" under the NJLAD because of his degenerative knee condition; and CCCF took "adverse action" against him on the basis of that disability because it placed him in an overcrowded cell in which he had to sleep on the floor. (DE 69 at 7-11.) Plaintiff's Response also "concedes [that] his Fourteenth Amendment claim cannot survive," and he asks the Court to "dismiss that claim with prejudice, including the NJCRA parallel in Count II." (DE 69 at 12-13 (Plaintiff "ha[s] no objection to the remaining counts [other than the NJLAD Claim] and defendants being dismissed").)

Defendants' Reply asks this Court to decline supplemental jurisdiction over the NJLAD Claim and seeks dismissal of the NJLAD Claim with prejudice, in the event the Court exercises supplemental jurisdiction. (DE 74 at 5-9.)

This Court finds that, for reasons discussed in Part IV(B) – IV(D) *infra*: (1) Defendants are entitled to summary judgment

on Counts I and II of the SAC by virtue of the lack of a genuine dispute of material fact as to Plaintiff's Due Process Claim and NJCRA Claim; (2) given that summary judgment is proper, there being no proof of a constitutional violation, the Court need not address Defendants' assertion of a qualified immunity defense; and (3) the Court declines to continue supplemental jurisdiction over Plaintiff's NJLAD Claim and will dismiss Count III of the SAC without prejudice.

## IV. **MOTION FOR SUMMARY JUDGMENT**

### A. **STANDARD OF REVIEW**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(a)). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to

that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact") (citation omitted). A plaintiff opposing a defendant's motion for summary judgment has the burden of coming forward with evidence, not mere allegations, that would raise a genuine dispute of material fact and suffice to enable a reasonable jury, giving all favorable inferences to the plaintiff as the party opposing summary

7

judgment, to find in plaintiff's favor at trial.

Although entitled to the benefit of all justifiable inferences from the evidence, "the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." United States v. Premises Known as 717 South Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e)) (citations omitted). Where, as in this case, the nonmoving party bears the burden of persuasion at trial, the moving party may be entitled to summary judgment by observing that there is an absence of evidence to support an essential element of the nonmoving party's case. Celotex Corp., 477 U.S. at 325; see also Rahman v. Taylor, No. 10-0367, 2013 WL 1192352, at *2-3 (D.N.J. Mar. 21, 2013). Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

Rule 56(c)(1)(A) further provides that, to create a genuine

issue of material fact, the nonmovant must do so by:

> citing to particular parts of materials in
> the record, including depositions,
> documents, electronically stored
> information, affidavits or declarations,
> stipulations (including those made for
> purposes of the motion only), admissions,
> interrogatory answers, or other materials.

Fed. R. Civ. P. 56(c)(1)(A). A party opposing summary judgment

must do more than just rest upon mere allegations, general

denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d

228, 232 (3d Cir. 2001).

**B.** **PLAINTIFF HAS NOT RAISED A GENUINE ISSUE OF MATERIAL FACT AS TO THE DUE PROCESS CLAIM, AND DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNT I OF THE SAC**

**1.** **The Record In This Case As To Conditions At CCCF**

The evidentiary record here consists of Defendants'

exhibits to their Motion (DE 60-4 – 60-7[1]), Plaintiff's exhibits

to his Response (DE 69-3 at 3-133[2]), and his Declaration in

---

[1] Defendants' Motion attached the following exhibits in support: Plaintiff's Deposition (DE 60-4) (Ex. A); July 2015 Cellmate History report for Plaintiff (DE 60-5) (Ex. B); Sixth and Final Consent Decree in Dittimus-Bey v. Taylor, No. 05-0063 (D.N.J. 2017) (DE 60-6) (Ex. C); and the May 23, 2017 Fairness Hearing transcript in Dittimus-Bey v. Taylor, No. 05-0063 (D.N.J.) (DE 60-7) (Ex. D).

[2] Plaintiff's Opposition attached the following exhibits: CCCF Remand Information Sheet for Plaintiff (DE 69-3 at 4) (Ex. A); Plaintiff's Deposition (DE 69-3 at 6-26) (Ex. B); June 3, 2009 Kennedy Health System medical records for Plaintiff (DE 69-3 at 28-30) (Ex. C); February 23, 2016 CCCF Intake Profile / Needs Assessment for Plaintiff (DE 69-3 at 32) (Ex. D); July 16, 2015 CCCF request to CFG Health Systems, LLC for Plaintiff's medical

opposition to the Motion. (DE 71-1.)

Defendants' document production suggests that Plaintiff was initially detained at CCCF in July 2015. (DE 60-5 at 2.) Plaintiff's SAC alleges the same. (DE 51 at 2.) This fact makes Plaintiff a member of the certified class in the matter of Dittimus-Bey.[3] (See DE 60-6 at ¶10.) In Dittimus-Bey, the plaintiffs had alleged several conditions of unhealthy, unsafe, and unsanitary environment as a direct result of severe overcrowding and understaffing at CCCF. (See DE 60-6 at ¶20.) In this case, Defendants appear to acknowledge that Plaintiff may have been housed in overcrowded conditions during his detention at CCCF, but they argue "[t]hat fact alone is not enough to establish conditions sufficiently serious to constitute unconstitutional punishment." (DE 60-2 at 20.) Construing this fact in favor of Plaintiff, the non-moving

---

records (DE 69-3 at 34) (Ex. E); August 14, 2015 CFG Health Systems, LLC Release of Information Authorization form (DE 69-3 at 36) (Ex. F); July 2015 Cellmate History report for Plaintiff (DE 69-3 at 38) (Ex. G); February 2016 Cellmate History report for Plaintiff (DE 69-3 at 40) (Ex. H); July 22, 2015 Sick Call Slip for Plaintiff (DE 69-3 at 42) (Ex. I); Transcript of May 3, 2019 deposition of Rebecca Franceschini (DE 69-3 at 44-97) (Ex. J); Transcript of January 30, 2019 deposition of Warden Karen Taylor (DE 69-3 at 99-115) (Ex. K); and CCCF Inmate Handbook (DE 69-3 at 117-133) (Ex. L).

[3] The Dittimus-Bey class action was for injunctive relief only and therefore does not bar Plaintiff's claim for damages in this matter.

party, the Court will presume that Plaintiff was housed in overcrowded conditions at some point during the period of his July 2015 – December 2015 and January-February 2016 CCCF detentions.

### 2. Governing Law As To Conditions Of Confinement

A pretrial detainee is protected from conditions constituting punishment under the Fourteenth Amendment's Due Process Clause.  Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1971).  Thus, the Fourteenth Amendment governs Plaintiff's Sleeping Allegation, Toilet Allegation, Food Preparation Allegation, Food Quality Allegation, and Air Allegation as a pre-trial detainee.

The mere fact that an individual is lodged temporarily in a cell with more persons than its intended design does not, on its own, rise to the level of a constitutional violation.  See Rhodes v. Chapman, 452 U.S. 337, 348-50 (1981) (holding double-celling by itself did not violate Eighth Amendment); Carson v. Mulvihill, 488 F. App'x 554, 560 (3d Cir. 2012) ("[M]ere double-bunking does not constitute punishment, because there is no 'one man, one cell principle lurking in the Due Process Clause of the Fifth Amendment'") (quoting Bell, 441 U.S. at 542)).  More is needed to demonstrate that such crowded conditions, for a pretrial detainee, "shock the conscience," and thus violate due

11

process rights.  See Hubbard v. Taylor, 538 F.3d 229, 233 (3d Cir. 2008) (noting that due process analysis requires courts to consider whether the totality of the conditions "cause[s] inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them").

### 3. Plaintiff Has Not Shown Constitutional Deprivation

Plaintiff concedes that there is no federal constitutional claim in the SAC. (DE 69 at 12-13.)  Therefore, summary judgment is granted to Defendants as to the Due Process Claim.

However, even without that concession, Plaintiff has not adduced evidence to defeat the summary judgment standard of review on the Due Process Claim.

With respect to Plaintiff's Sleeping Allegation, discovery demonstrated the following with respect to his CCCF cell arrangements: (a) July 5 – July 9, 2015: Plaintiff was housed in cell 77 with two other inmates (DE 60-5); (b) July 9, 2015 – July 10, 2015: Plaintiff was housed with one other inmate in special needs unit 2 South A block (id.; DE 60-4 at 14); (c) July 10 – August 7, 2015: Plaintiff was housed with two other inmates in the cell (DE 60-5); (d) August 7 – October 21, 2015: Plaintiff was housed with three other inmates in the cell (id.); (e) October 22 – November 2, 2015: Plaintiff was housed with two

12

other inmates in the cell (<u>id</u>.); and (f) November 2 – December 7, 2015: Plaintiff was housed with three other inmates in the cell. (<u>Id</u>.)

With respect to his Toilet Allegation, Plaintiff denied seeking medical care due to the allegedly unsanitary toilet conditions. He testified at his deposition that "[i]t was just a physical repulsion or psychological repulsion of ... somebody peeing right next to you and you wake up to it." (DE 60-4 at 17.)

With respect to his Food Preparation Allegation, Plaintiff testified at deposition that while at CCCF he had "seen a mouse turd on my tray," but he "had never worked in the kitchen. I've heard word of mouth regarding what infestation [was] in the kitchen facility there." (DE 60-4 at 18.) He testified that he saw the vermin residue on his food tray "only one time" during "the first span of time that I was in the [CCCF] facility." (<u>Ibid</u>. ("It was within probably the first half of my five months").)

With respect to his Food Quality Allegation, Plaintiff's contention arises from his impression that CCCF food "portions were very small ... just like a kid's meal." (DE 60-4 at 18.) Aside from allegedly small portion sizes, his Food Quality Allegation arises from only two other issues: CCCF never posted

a menu guide for detainees; and CCCF stopped providing desserts and overnight snack packs at some point during Plaintiff's detention at the facility. (Id. at 18 ("There were numerous times no dessert").) When asked whether he ever sought treatment from CCCF's medical unit for malnutrition or any food-related or lack-of-food illness, Plaintiff answered: "No, sir." (Id. at 18-19.)

With respect to his Air Allegation, Plaintiff's contention arises from both a smell that came from his cell's vent as well as the cell's general odor. (DE 60-4 at 17.) He explained that "guys didn't want to sleep with their heads under the bunk ... [T]he other choice would be by the door, which is the toilet." (Id.) Therefore, "either I'd have to breathe that [vent] air or the [air by] the urinary area ... [Y]our head would be by the door next to the toilet." (Id.) He stated that he "never sought medical attention for my breathing, [and] I never got short of breath, but the smell [was] repulsive, body odor and stuff." (Id.)

Neither Plaintiff's SAC (*see* DE 51) nor his discovery responses (see DE 69-3 and DE 71-1) and summary judgment submissions (see DE 69 and DE 74) on these five Allegations state a claim of constitutional magnitude to defeat summary judgment.

As to the Sleeping Allegation, "the Constitution does not mandate comfortable prisons." Carson, 488 F. App'x at 560 (quoting Rhodes, 452 U.S. at 349). Plaintiff has adduced no evidence that the conditions he experienced while incarcerated in a purportedly overcrowded cell were so severe that they "shock the conscience." See Hubbard, 538 F.3d at 233. Being a detainee in an overcrowded unit does not, standing alone, rise to the level of a due process violation. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes, 452 U.S. at 347.

Here, Plaintiff has not demonstrated that Defendants' failure to ensure he slept on a bottom bunk shocks the conscience. The record shows that CCCF made cell assignment determinations based on a variety of considerations, including the "safety [and] security] of the inmate[,] their custody level, their charges, their disciplinary. Many factors." (DE 69-3 at 78.) "[T]he [detention facility] must be able to take steps to maintain security and order at the institution ... Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment." Bell, 441 U.S. at 540. See also Marnin v. Pinto, 463 F.2d 583, 584 (3d Cir. 1972)

("blanket statements alleging bad food and miserable living conditions in the prison" were "naked statements [that do not] ordinarily merit Federal court intervention"); Stewart v. Wright, No. 96-1486, 1996 WL 665978, at *1 (7th Cir. Nov. 14, 1996) ("[I]t is well settled that conditions which are temporary and do not result in physical harm are not [constitutionally] actionable"); Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982) ("[A] sentence in prison is not a guarantee that one will be safe from life's occasional inconveniences").

As to the Toilet Allegation, Plaintiff has neither suggested nor shown that he was "forced to live in squalor" by virtue of sleeping proximity to toilet facilities. See Ridgeway v. Guyton, 663 F. App'x 203, 205 (3d Cir. 2016). In fact, Plaintiff expressly disclaimed any health concerns or health problems arising from the toilet situation. His Toilet Allegation, therefore, falls far short of those that courts have held satisfy the requirement of an "objectively, sufficiently serious" injury. See ibid. Although this Court "do[es] not doubt that the problem with the toilet was unpleasant, we must conclude, under the totality of the circumstances, that [Plaintiff's Toilet Allegation] fail[s] to allege the objectively, 'sufficiently serious' conditions of confinement necessary for a viable claim." See id. at 205-06.

As to the Food Preparation Allegation, "isolated instances of contaminated or spoiled food, while certainly unpleasant, are not unconstitutional." Duran v. Merline, 923 F. Supp. 2d 702, 720 (D.N.J. 2013). While unsanitary living conditions may give rise to a conditions of confinement claim, Plaintiff here has shown nothing but his displeasure with less than perfect jail conditions. Plaintiff has not shown -- in fact, he denies -- that the supposed rodent condition potentially jeopardized his health or caused any injuries. He has not demonstrated that the supposed kitchen conditions were imposed as "punishment." See Duran, 923 F. Supp. 2d at 720; Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005).

Moreover, courts have, in fact, "routinely recognized that '[k]eeping vermin under control in jails, prisons and other large institutions is a monumental task, and that failure to do so, without any suggestion that it reflects deliberate and reckless conduct in the criminal law sense, is not a constitutional violation." See, e.g., Holloway v. Cappelli, No. 13-3378, 2014 WL 2861210, at *5 (D.N.J. June 24, 2014) (citing Chavis v. Fairman, 51 F.3d 275, *4 (7th Cir. 1995) (internal citations omitted)). Here, Plaintiff has not shown that any Defendants either ignored the alleged vermin at CCCF or denied Plaintiff medical treatment for any health injuries arising from

17

the supposed rodents.  As such, Plaintiff's displeasure with the situation is not actionable.  See ibid.

As to the Food Quality Allegation, "[s]o long as the [prison] food is nutritionally adequate, the mere fact that it is unvaried or cold does not give rise to a constitutional violation."  Duran, 923 F. Supp. 2d at 720 (citing Nickles v. Taylor, Nos. 09-313, 09-557, 09-952, 2010 WL 1949447, at *5 (D.N.J. May 14, 2010) ("A single or occasional incident involving spoiled food is insufficient to show that Plaintiff has been denied life's necessities").  Occasional incidents during incarceration involving inferior food (or meals that Plaintiff did not otherwise enjoy or find sufficient[4]) are insufficient to show that Plaintiff has been denied life's necessities.

As to the Air Allegation, the Constitution affords a right to adequate ventilation.  See Wilson v. Cook Cty. Bd. of Comm'rs, 878 F. Supp. 1163, 1169 (N.D. Ill. 1995).  Inadequate ventilation and air flow are unconstitutional if they "undermine

---

[4] See DE 69-3 at 104 (Warden Taylor testified at deposition, inter alia: that inmates complained "that they don't like the food, but [not about] the quality"; that she never received a complaint about rodent droppings in food; that CCCF contacted a pest control company when the facility received inmate complaints about vermin in the kitchen; and inmate complaints about seeing kitchen rodents ceased after CCCF used a pest control company to eradicate the vermin).

the health of inmates and the sanitation of the penitentiary.'

_Hoptowit v. Spellman_, 753 F.2d 779, 784 (9th Cir. 1985)."

_Keenan v. Hall_, 83 F.3d 1083, 1090 (9th Cir. 1996). Here,

Plaintiff has not shown that the vent and cell odors were

sufficiently serious. See _Gause_, 339 F. App'x at 134. While

ventilation at CCCF may have been unpleasant, Plaintiff has not

made any showing that it was unconstitutional.

After careful review of the record and the parties'

submissions on the Motion, and viewing the evidence in the light

most favorable to Plaintiff, this Court finds that entry of

summary judgment on the Due Process Claim is appropriate. The

evidence of record does not raise a question of material fact as

to Count I's merits that cannot be resolved upon summary

judgment. Even affording Plaintiff the benefit of the doubt, he

has not raised a genuine issue of material fact as to whether

confinement at CCCF deprived him of any basic human needs. For

all of these reasons, Defendants are entitled to summary

judgment on Plaintiff's Due Process Claim.

**C.** **PLAINTIFF HAS NOT RAISED A GENUINE ISSUE OF MATERIAL FACT AS TO THE NJCRA CLAIM, AND DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNT II**

Summary judgment is granted to Defendants as to the NJCRA

Claim, given Plaintiff's concession that there is no federal

constitutional claim in the SAC. (DE 69 at 12-13.)

However, even without that concession, Plaintiff has not adduced evidence to defeat the summary judgment standard of review.

**1.  Governing Law As To NJCRA Claim**

N.J. Stat. Ann. § 10:6-2 states, in pertinent part:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges, or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges, or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J. Stat. Ann. § 10:6-2(c).  "The NJCRA allows a party who has been deprived of any substantive due process, equal protection rights, privileges or immunities secured under either the Federal or State Constitutions to bring a civil action for damages and injunctive relief."  McPeek v. Deputy Atty. Gen. of State, No. A-2181-07T3, 2008 WL 5273081, at *5 (N.J. Super. Ct. App. Div. Dec. 22, 2008) (citing N.J. Stat. Ann. § 10:6-1, - 2(c)).

The NJCRA was modeled after the federal civil rights act, 42 U.S.C. § 1983, to provide a state remedy for civil rights

20

violations.  Slinger v. New Jersey, No. 07-5561, 2008 WL

4126181, at *7 (D.N.J. Sept. 4, 2008).  "The substantive

language of the N.J.C.R.A. closely mirrors the language of 42

U.S.C. § 1983.  The purpose of the N.J.C.R.A. is virtually

identical to the purpose of 42 U.S.C. § 1983, and both protect

against the same set of harms."  Duncan v. Pocquat, No. 07-1570,

2009 WL 10728565, at *2 (D.N.J. Oct. 15, 2009).  For this

reason, "courts in New Jersey have consistently looked at claims

under the NJCRA through the lens of § 1983" and "have repeatedly

construed the NJCRA in terms nearly identical to its federal

counterpart."  Velez v. Fuentes, No. CV156939MASLHG, 2016 WL

4107689, at *5 (D.N.J. July 29, 2016) (citing Samoles v. Lacey

Twp., No. 12-3066, 2014 WL 2602251, at *15 (D.N.J. June 11,

2014) (internal quotation marks omitted)).  "This district has

repeatedly interpreted NJCRA analogously to § 1983." Pettit v.

New Jersey, No. 09-3735, 2011 WL 1325614, at *3 (D.N.J. Mar. 30,

2011).[5]

---

[5] See also Estate of Martin v. U.S. Marshals Serv. Agents, 649 F.
App'x 239, 245 n.4 (3d Cir. 2016) (holding that "it appears
undisputed that Plaintiffs' claims under the New Jersey
Constitution and the New Jersey Civil Rights Act trigger the
same legal elements and principles as ... [the] federal causes
of action [under Section 1983]"); Trafton, 799 F. Supp. 2d 444
(a court "will analyze ... NJCRA claims through the lens of §
1983"); Armstrong v. Sherman, No. 09-716, 2010 WL 2483911, at *5
(D.N.J. June 4, 2010).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Velez, 2016 WL 4107689, at *2 (citing West v. Atkins, 487 U.S. 42, 48 (1988) (emphasis added)).

### 2. The NJCRA Claim Fails As A Matter Of Law

For the reasons explained supra in Section IV(B) of this Opinion, Plaintiff has not raised a genuine dispute of material fact as to purported violation of his constitutional rights arising from overcrowded confinement at CCCF. He therefore has not stated a claim under § 1983. See Velez, 2016 WL 4107689, at *2. Accordingly, his NJCRA Claim similarly fails as a matter of law. See Slinger, 2008 WL 4126181, at *7; Duncan, 2009 WL 10728565, at *2; Velez, 2016 WL 4107689, at *5; Pettit, 2011 WL 1325614, at *3; Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 444 (D.N.J. 2011). For all of these reasons, Defendants are entitled to summary judgment on Count II of the SAC.

### D. This Court Declines To Exercise Supplemental Jurisdiction As To The NJLAD Claim

While conceding that his Due Process Claim and NJCRA Claim "cannot survive" (DE 69 at 12), Plaintiff maintains that

Defendants' Motion should be denied as to the NJLAD Claim.[6] (Id. at 13.) This Court need not and does not reach the merits of the Motion as to the NJLAD Claim because the Court declines to continue supplemental jurisdiction over Count III of the SAC.

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." A district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if:

---

[6] The NJLAD provides in relevant part that "[a]ll persons shall have the opportunity ... to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation ... without discrimination because of ... disability." N.J. Stat. Ann. § 10:5-4. The courts of this district have regularly held that correctional facilities are places of public accommodation within the meaning of the NJLAD. See, e.g., Anderson v. Cnty. of Salem, No. 09-4718, 2010 WL 3081070, *11 (D.N.J. Aug. 5, 2010) (collecting cases); see also Chisolm v. McManimon, 97 F. Supp. 2d 615, 621-22 (D.N.J. 2000), rev'd and remanded on other grounds, 275 F.3d 315 (3d Cir. 2001) (predicting that the New Jersey Supreme Court would find that jails and prisons are "places of public accommodation"). "New Jersey courts generally interpret the [NJ]LAD by reliance upon [the construction of] analogous federal antidiscrimination statutes." Chisolm, 97 F. Supp. 2d at 621. To prevail, a plaintiff must establish that he "(1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse action because of that disability." D.G. v. Somerset Hills Sch. Dist., 559 F. Supp. 2d 484, 503 (D.N.J. 2008)).

(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

The law on supplemental jurisdiction has been long established:

> Pendent jurisdiction, in the sense of judicial power ... [is a] power [that does not] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

United Mine Workers of America v. Gibbs, 383 U.S. 715, 726–27 (1966).

Ultimately, a "district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) (citing Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)) ("Depending on a host of factors, then — including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims — district courts may decline to exercise jurisdiction over supplemental state law claims.")).

In this case, three factors compel the Court to decline to decline to exercise supplemental jurisdiction over the NJLAD Claim:

(1) The only remaining claims in Plaintiff's SAC are for violations of the NJLAD, which the New Jersey Legislature enacted in an effort to "eradicat[e] ... the cancer of discrimination.'" Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445, 451 (N.J. 1993). See also Thurston v. Cherry Hill Triplex, 941 F. Supp. 2d 520, 534 (D.N.J 2008) ("The NJLAD was enacted with the express purpose of protecting civil rights ...");

_Tomahawk Lake Resort_, 754 A.2d 1237, 1243 (N.J. Super. Ct. App. Div. 2000) ("Among its other objectives, the [NJ]LAD is intended to insure that handicapped persons will have full and equal access to society, limited only by physical limitations they cannot overcome") (internal quotations and citations omitted). Even though this Court is "bound to apply state law" to plaintiffs' NJLAD claims, the Supreme Court in _Gibbs_ directed 50 years ago that "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." _Gibbs_, 383 U.S. at 726–27.

Applying that principle in this case, the determinations of the scope of NJLAD and what conduct constitutes a violation of NJLAD are better suited to be adjudicated by the New Jersey courts. _See_, _e.g._, _Collins v. Cty. of Gloucester_, No. 06-2589, 2009 WL 2168704, at *2 (D.N.J. July 17, 2009) (after the federal claims were dismissed, declining to continue exercising supplemental jurisdiction over remaining state law claims, and observing "a state court, who by virtue of that judge's expertise and principles of comity is in a better position to decide the questions of state law raised by" the plaintiff's claims); _Kalick v. Northwest Airlines Corp._, No. 08-2972, 2009 WL 2448522, at *8 (D.N.J. Aug. 7, 2009) (following the reasoning

of <u>Collins</u>, 2009 WL 2168704, and declining to continue exercising supplemental jurisdiction over the plaintiff's state law claims); <u>Carluccio v. Parsons Inspection & Maint. Corp.</u>, No. 06-4354, 2007 WL 1231758, at *6 (D.N.J. Apr. 24, 2007) (declining to exercise supplemental jurisdiction over plaintiff's New Jersey Conscientious Employee Protection Act claim and not considering its merits); <u>see</u> <u>also</u> <u>Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.</u>, 140 F.3d 478, 487 (3d Cir. 1998) ("[T]he question of whether the proposed funding scheme for the Westside Connector violates the New Jersey Constitution is a complex issue of state law which is better left to the New Jersey courts to determine") (citing <u>Doe v. Sundquist</u>, 106 F.3d 702, 708 (6th Cir. 1997) (declining to exercise supplemental jurisdiction, in part, "out of respect for the right of a state court system to construe that state's own constitution")).

(2) Even though discovery in this case has concluded and the dispositive motion deadline has passed (DE 48; DE 53), the action is still currently "before trial." <u>See</u> <u>Gibbs</u>, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").

(3) Defendants have demanded a jury trial as to the NJLAD Claim. (See DE 54 at 7.) Plaintiff also prefers to have a New Jersey state court hear his case. (See DE 1 at 9.) Those considerations, along with 28 U.S.C. § 1367(a) and United States Supreme Court and Third Circuit precedent, all support the conclusion that this Court should decline to continue exercising supplemental jurisdiction over this matter.

An appropriate order will be entered dismissing Count III of the SAC without prejudice. Plaintiff may, if he chooses, try to pursue his NJLAD Claim in state court. See Artis v. Dist. of Columbia, 138 S. Ct. 594 (2018) (the federal supplemental jurisdiction statute, 28 U.S.C. § 1367, pauses the clock on a statute of limitations until thirty days after a state-law claim is dismissed by a federal court).

**E. WHETHER CLAIMS AGAINST DEFENDANTS MUST BE DISMISSED BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY**

In addition to the grounds discussed in Sections IV(B) and IV(C) of this Opinion, Defendants also request that this Court grant summary judgment on the basis of qualified immunity. (DE 60-2 at 23.)

Qualified immunity protects government officials from liability as long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982); <u>Kelly v. Borough of Carlisle</u>, 622 F.3d
248, 253 (3d Cir. 2010).  The qualified immunity test is two-
pronged: whether the pleadings allege that constitutional
violation occurred, and whether "reasonable officials could
fairly have known that their alleged conduct was illegal."
<u>Saucier v. Katz</u>, 533 U.S. 194, 121 (2001); <u>Larsen v. Senate of
the Commonwealth of Pa.</u>, 154 F.3d 82, 86 (3d Cir. 1998).

Given that Plaintiff fails to demonstrate a basis for a
constitutional violation, there is no need to address whether a
reasonable official would know his conduct was unlawful.

**V.**   **CONCLUSION**

For the reasons stated above; the Defendants' motion for
summary judgment will be granted as to the Due Process Clam and
the NJCRA Claim in Counts I and II of the SAC; and the Court
will decline to continue to exercise supplemental jurisdiction
over the NJLAD Claim.  An accompanying Order will be entered.


 **December 31, 2019**                    **s/ Noel L. Hillman**
Date                                NOEL L. HILLMAN
                                    U.S. District Judge

At Camden, New Jersey